J-S45043-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD BRANDON NAYLOR | : | |
| | : | |
| Appellant | : | No. 2964 EDA 2016 |

Appeal from the Judgment of Sentence August 18, 2016
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004290-2015

BEFORE:    GANTMAN, P.J., PANELLA, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED SEPTEMBER 08, 2017**

Richard Brandon Naylor (Appellant) appeals from his judgment of sentence imposed after he was convicted of aggravated assault, firearms not to be carried without a license, and persons not to possess firearms. In addition, Appellant's counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). We affirm the judgment of sentence and grant the petition to withdraw.

The trial court summarized the facts established by the Commonwealth at Appellant's trial.

> On June 4, 2015, Chief James Nolan [and other police officers from the Chester City police department] were conducting a surveillance operation along the city's 400 block of Bickley Street. At this time of night, there was street lighting on Bickley Street illuminating the area.

_____
*Retired Senior Judge assigned to the Superior Court.

* * *

[After exiting a residence the police had secured,] Chief Nolan observed [that] Officer William Carey had come in contact with [Appellant] on the opposite side of the street … and began to converse with [Appellant]. The chief described [Appellant] as a black male with a beard and short hair wearing dark clothing.

Chief Nolan proceeded across the street toward the direction of Officer Carey and [Appellant] while the two men continued to speak. When he was only about three to five feet away, Chief Nolan observed Officer Carey put his right hand on [Appellant], who reacted by pushing the officer and simultaneously pulling a semi-automatic firearm from his waistband. On seeing the handgun, Chief Nolan shouted "gun" to alert Officer Carey and the other nearby police [officers] that [Appellant] was in possession of a firearm. [Appellant] then fled.

With [Appellant's] taking flight, Officer Carey, Chief Nolan, and Officer Marc Barag immediately commenced a foot chase down Bickley Street before pursuing him into a nearby alley.

Seconds after entering the alleyway, [Appellant] fired his handgun. Chief Nolan heard the sound of the gunshot as well as observed a muzzle flash. ([According to a detective testifying as an expert at trial, a] muzzle flash [occurs] "…when a cartridge is discharged [and] the gases that are burned from the powders … flame out [of] the front of the muzzle, … almost like a little small fireball coming out.") Chief Nolan testified that he was in such close proximity to the discharge of [Appellant's] gun that he felt the percussive force from the fired round. … Following this initial shot, there were several other rounds fired that Chief Nolan was later advised were discharged by Officer Carey. Officer Barag then collided with Chief Nolan in the alleyway before they both continued their chase.

The pursuing officers finally lost [sight] of [Appellant] resulting from [Appellant's] climbing a fence located at the alley's end. …

[Since Chief Nolan had kept Appellant in his sight between Chief Nolan's initial observations and Appellant's clearing of the fence,] at trial, Chief Nolan, without equivocation, identified

- 2 -

[Appellant] as the man Officer Carey approached that night, toward whom he had walked within a distance of three to five feet, and who[m] he and other police officers [had] chased into a close[-]by alleyway where [Appellant] fired his semi-automatic handgun before fleeing over the fence at the alley's end.

* * *

Like Chief Nolan, Officer Barag [testified that he] observed Officer Carey make contact with [Appellant] who, *inter alia*, he described as [a black male with] a beard. Following Officer Carey's initial interaction with [Appellant], the officer proceeded to walk over to where the two men were located. Officer Barag testified that when approaching them, he could "… see a hundred percent the one [] side of [Appellant's] face[,] … a perfect profile of his face …."

* * *

From the observations of his clearly[-]visible facial features on approaching him continuing through those of the ensuing foot chase, Officer Barag, at trial, absent any qualifications, identified [Appellant] as the black male Officer Carey encountered that night, who on fleeing was pursued by police into the close by alleyway, where he discharged a firearm prompting Officer Carey to return fire.

Officer [Carey] also testified as to his observations of that evening, June 4, 2015. This officer detailed that on the night in question he and other participating police were wearing plain clothes and vests emblazoned with the word "POLICE." Officer Carey also had his police badge displayed hanging from a chain around his neck. Officer Carey recounted [that] beyond the illumination of the block from the street lights, throughout the incident he was utilizing his police flashlight. He as well testified there was some lighting about the breezeway emanating from the houses forming the alley.

Responding to the suspicious condition radio calls, Officer Carey arrived in the vicinity …. On exiting his police vehicle, the officer saw two persons walking along the block followed by [Appellant]. After the first two persons crossed over in front of Officer Carey, they pointed and otherwise indicated to [Appellant]. Officer Carey decided to speak to [Appellant].

In addition to the police badge and attire he was wearing, Officer Carey verbally identified himself as law enforcement three to four times, approached [Appellant], and from a distance of two feet commenced a discussion with him. The officer inquired of [Appellant] his recent whereabouts. [Appellant] answered Officer Carey's question, but when next asked for his name provided a mumbled reply causing the officer to ask for identification. On Officer Carey's request, [Appellant] immediately turned his body to the side in what the officer characterized as a "bladed," "defensive posture." …Officer Carey next grasped at [Appellant] prompting [Appellant] to violently push off the officer and immediately flee down Bickley Street.

[Appellant] continued a short distance east on Bickley Street before running down a close[-]by alley. While chasing [Appellant], together with Officer Barag and Chief Nolan, Officer Carey yelled numerous times for him to stop running [but his warnings were] ignored.

On [Appellant's] reaching the fence at the end of the breezeway, he and Officer Carey were approximately 15 feet from each other when the officer noticed a silver firearm with black grips on the left side of [Appellant's] body. Just a second later, Officer Carey heard a gunshot and saw a muzzle flash at the alleyway's end. In response to [Appellant's] gunfire, Officer Carey drew his weapon and discharged five shots. [Appellant] then climbed over the fence located at the end of the alley and escaped.

As he was focused on the male from the time the other two persons walking along Bickley Street brought [Appellant] to his attention, including a discussion and interaction with him from a mere two feet, continuing throughout the pursuit into the nearby alleyway, and [Appellant's] discharging of the firearm while in the alley when just some 15 feet away, Officer Carey, at trial, without any reservations, identified [Appellant] as the black male he directly interacted with that night, the same individual he chased down Bickley Street into the close[-]by breezeway before [Appellant turned to his left back towards the officers] and fired a semi-automatic handgun resulting in the officer returning fire.

* * *

- 4 -

After the police established a perimeter around the Bickley Street area, Officer William J. Murphy … and his police tracking dog were called to the shooting scene. …After the police dog swept through the yard and [Appellant] was not located, Officer Murphy observed a silver Taurus semi-automatic handgun against the fence and alerted assisting officers[,] resulting in the firearm's recovery just some ten minutes subsequent to the shooting.

[At trial, Detective Louis Grandizio, testifying as an expert trial without objection, recounted his determination that (1) the recovered Taurus handgun was operable and did not malfunction or accidentally discharge, and (2) a cartridge recovered at the scene was fired by the recovered Taurus handgun. Appellant did not have a license to carry this firearm and his prior criminal convictions prohibited him from possessing this firearm.]

Jorge Rivera, a residen[t] of Bickley Street, also appeared at trial as a prosecution witness.[40] Mr. Rivera explained that on the night in question he saw Officer Carey approach a black male. After their initial interaction, he observed this individual flee from the police on Bickley Street before turning down the alleyway. While watching the male run from the police, Mr. Rivera observed this person had in his possession a firearm located about his waist. Shortly after this individual and the pursing police ran into the breezeway[,] Mr. Rivera heard gunshots.

_____
[40] Mr. Rivera testified through a Spanish court interpreter.

Within a week of the shooting (June 10, 2015), Mr. Rivera visited the Chester City Police Department and was shown a photo array by Detective Lawrence Weigand … and a Spanish speaking policeman, Officer Demoss Jones. The photo array consisted of eight similarly[-]depicted … black males [who had physical appearances similar to Appellant's]. Mr. Rivera circled on this photo array the person he saw on the night in question fleeing from the police while in possession of handgun about his waistband and appropriately identified the same by also signing and dating the array form. [Although at trial Mr. Rivera was unable to identify Appellant in court, Detective Weigand testified that the] individual circled by Mr. Rivera *via* the photo array was [Appellant].

- 5 -

Trial Court Opinion, 12/9/2016, at 15-23 (record citations, duplicative numbers, and some footnotes omitted).

After hearing the above-summarized evidence, the jury convicted Appellant of firearms not to be carried without a license and aggravated assault – attempt by physical menace to put enumerated person in fear of imminent serious bodily injury (Officer Carey). The jury acquitted Appellant of two counts of aggravated assault based upon Chief Nolan and Officer Barag as victims. On the same day, after the parties stipulated to Appellant's prior criminal convictions, the trial court found Appellant to be guilty of persons not to possess firearms.

On August 18, 2016, the trial court sentenced Appellant to five to ten years' of incarceration for persons not to possess firearms, a concurrent term of three to six years' of incarceration for aggravated assault, and a consecutive term of seven years' probation for firearms not to be carried without a license.

After the ten-day time period for filing post-sentence motions expired, Appellant filed a petition for reconsideration. The trial court permitted Appellant to proceed *nunc pro tunc*, but denied the petition on September 9, 2016.[1] Through his counsel, Appellant timely filed a notice of appeal.[2] The

---

[1] An untimely-filed post-sentence motion tolls the appeal period only when the trial court accepts it under its limited authority to allow the filing of a post-sentence motion *nunc pro tunc*. **Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015).

trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied.

In this Court, Appellant's counsel filed both an **Anders** brief and a petition to withdraw as counsel. Accordingly, the following principles guide our review of this matter.

> Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof....
>
> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 720-21 (Pa. Super. 2007) (citations omitted).

---

[2] Despite still being represented by counsel, prior to sentencing, Appellant prematurely filed *pro se* a notice of appeal, which was later dismissed by this Court.

Our Supreme Court has clarified portions of the **Anders** procedure as follows.

> Accordingly, we hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and **Anders** brief, we conclude that counsel has complied substantially with the above requirements.[3] Once "counsel has met these obligations, 'it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" **Commonwealth v. Flowers**, 113 A.3d 1246, 1249 (Pa. Super. 2015) (quoting **Santiago**, 978 A.2d at 354 n. 5).

According to counsel, the only issue of arguable merit is whether the Commonwealth failed to prove beyond a reasonable doubt that Appellant committed the offenses charged due to Jorge Rivera's failure to identify Appellant in the courtroom at trial.

---

[3] Appellant has not responded to counsel's petition to withdraw.

- 8 -

We have expressed the following regarding a challenge to the sufficiency of the evidence produced at trial.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Hecker*, 153 A.3d 1005, 1008 (Pa. Super. 2016) (citation omitted).

In determining whether a particular identification was reliable, the court

> should consider the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of his or her prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at

- 9 -

the time of the crime is the key factor in the totality of the circumstances analysis.

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

***Commonwealth v. Valentine***, 101 A.3d 801, 806 (Pa. Super. 2014) (citations omitted).

We agree with counsel that a challenge to the sufficiency of the evidence based upon Mr. Rivera's failure to make an in-court identification of Appellant is frivolous. All three of Appellant's convictions stem from the same incident: his shooting a firearm, for which he had no license to carry and was not permitted to possess, in a narrow alleyway in close proximity to Officer Carey and two other officers, all of whom were pursuing him. Although he did not make an in-court identification, Mr. Rivera acknowledged at trial that he had identified the man he saw running from police with a pistol in a photograph array shortly after the shooting, and Detective Weigand testified that the man Mr. Rivera identified was Appellant. N.T., 6/22/2016, at 93, 97. The jury was free to determine that Appellant was the shooter based upon the evidence of Mr. Rivera's out-of-court identification made close in time to the incident. ***Commonwealth v.***

***Sanders***, 42 A.3d 325, 329 (Pa. Super. 2012) (concluding that there was sufficient evidence to support convictions for aggravated assault, possession of an instrument of crime, and persons not to possess firearms based upon prior out-of-court identifications admitted into evidence, notwithstanding witnesses' failure to make in-court identifications).

Moreover, Officer Carey, Chief Nolan, and Officer Barag, each of whom had ample opportunity to view Appellant during the incident, testified unequivocally that Appellant is the person who ran from police and shot the firearm. N.T., 6/21/2016, at 145, 167; N.T., 6/22/2016, at 9-10. This testimony is sufficient to sustain Appellant's convictions notwithstanding Mr. Rivera's failure to make an in-court identification. ***Commonwealth v. Patterson***, 940 A.2d 493, 502 (Pa. Super. 2007) (citing ***Commonwealth v. Wilder***, 393 A.2d 927, 928 (Pa. Super. 1978) (stating that a positive, unqualified identification by one witness is sufficient for conviction)). The testimony of all of the witnesses need not align in order to withstand a sufficiency challenge; disparities between witnesses' testimony "does not render the evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence."[4] ***Id.*** (citations omitted).

---

[4] A claim challenging the weight of the evidence would also be frivolous. As the trial court correctly notes, Appellant has waived any weight claims based upon his failure to preserve such a claim in a pre- or post-sentence motion. Trial Court Opinion, 12/9/2016, at 11 n. 36 (citing ***Commonwealth v.***

Based on the foregoing, we conclude that a challenge to the sufficiency of the evidence based upon Mr. Rivera's failure to make an in-court identification is frivolous. Moreover, we have conducted "a full examination of the proceedings" and conclude that "the appeal is in fact wholly frivolous." *Flowers*, 113 A.3d at 1248. Thus, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/8/2017

---

*Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012); *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa. Super. 2012); Pa.R.Crim.P. 607(a)).