**COMMONWEALTH Of Pennsylvania,
Appellee**

v.

**Steve BRYANT, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 2012.
Filed Nov. 26, 2012.

Tobi A. Russeck, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.

Steve Bryant ("Appellant") appeals from an April 26, 2011 judgment of sentence. For the reasons set forth herein, we affirm.

The trial court aptly summarized the facts of the case:

In 2005, [R.M.] began living ... in the city of Philadelphia with her cousin [D.B.], [D.B.'s] husband [T.B.], and [D.B.'s] son [M.B.]. While [R.M.] lived there, [D.B.'s] other son, [Appellant], frequently visited the home. In March 2006, when [R.M.] was thirteen years old and [Appellant] was thirty-four years old, [Appellant] touched [R.M.] in an unwanted and sexual manner on five separate occasions while they were alone in the house.

\* \* \*

Prior to these events, [R.M.] had started writing in a diary at age twelve and wrote in it daily. She kept her diary a secret and did not intend on showing it to anyone else. In March 2006, [R.M.] wrote about what [Appellant] did to her in her diary. [R.M.] again wrote about [Appellant] touching her in a different diary in an entry dated April 17, 2007. In July 2007, [R.M's] ten-year-old cousin found that diary on [R.M.'s] bed and, after reading the April 17, 2007 entry,

reported it to [D.B.]. [D.B.] informed her daughter [A.J.], a Sergeant in the Philadelphia Police Department, of the diary's content. [A.J.] questioned [R.M.] about the diary, but she had not wanted to expose what [Appellant] did to her and thus, was not forthright about it at that time. When [A.J.] questioned [Appellant], he denied the accusations.

Consistent with her duty to report accusations of sexual abuse, [A.J.] gave the diary to the Special Victims Unit ("SVU"). However, the diary with the March 2006 entries was not turned over to the police. During the police investigation that followed, [Appellant] denied the allegations against him, but continued to be cooperative. [R.M.], however, did not want others to read her diary and thus, did not want to speak about the prior incidents. Nevertheless, on July 21, 2007, SVU Detective Kim Organ interviewed [R.M.] about the accusations. During the interview, [R.M.] was very upset and crying and although it was difficult for her to discuss what had happened, she admitted in her statement to Detective Organ that [Appellant] had touched her sexually.

Trial Court Opinion ("T.C.O."), 2/22/12, at 2–5.

The trial court also summarized the procedural background:

On February 9, 2011, [Appellant] elected to exercise his right to a jury trial and pled not guilty to Aggravated Indecent Assault,[1] [Endangering the Welfare of a Child ("EWOC") ],[2] and Indecent Assault.[3] On February 11, 2011,

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. § 3125.

2. 18 Pa.C.S. § 4304.

3. 18 Pa.C.S. § 3126.

the jury found [Appellant] guilty of EWOC and Indecent Assault. The case was deferred to April 26, 2011 for a pre-sentence investigation report and sentencing. On April 26, 2011, this court sentenced Bryant to 3–6 years of incarceration in a state facility for EWOC. [Appellant] received no further penalty on the remaining charge.

On May 24, 2011, [the trial court] received a timely Notice of Appeal; however, this appeal was never docketed by the Superior Court. On August 2, 2011, this court reinstated [Appellant's] appellate rights *nunc pro tunc* and appointed new appellate counsel.[4]

T.C.O. at 1–2 (italics added). This timely appeal followed.[5]

Appellant raises the following issues:

1. Did the court err as a matter of law by denying the admissibility of the other diary pages under Pa.R.E. 106?

Did the court err as a matter of law by rendering a verdict which was against the weight and sufficiency of the evidence as it pertained to Endangering the Welfare of a Child (EWOC)?

Brief for Appellant at 4.

◾ Appellant's first issue challenges the trial court's decision to exclude R.M.'s diary with the exception of one page. Our standard of review is well-settled. The admissibility of evidence is within the "sound discretion" of the trial court, "which may only be reversed upon a showing that the court abused its discretion." *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 633 (1995).

Before reaching the merits of Appellant's claim, we must determine whether that claim was properly preserved. The Commonwealth argues that it was not. Brief of Appellee at 7.

◾ A review of the record reveals that the Commonwealth presented a motion *in limine* seeking a protective order barring the admission of additional pages of the diary. Notes of Testimony ("N.T."), 7/11/08, at 2–5. Appellant objected to that order. *Id.* Neither a copy of the Commonwealth's motion, nor the resultant order of court, is included in the certified record. It is unclear whether the motion was made orally or in writing. However, a notation of order appears in the case docket, and Appellant's opposition to the exclusion of the bulk of the diary is adequately recorded in the hearing transcript. *Id.* We find that this objection is sufficient to preserve the issue on appeal pursuant to Pennsylvania Rule of Evidence 103(a)(1), stating that "[e]rror may not be predicated upon a ruling that admits or excludes evidence unless ... a timely objection, motion to strike or *motion in limine* appears of rec-

---

4. The trial court docket provides the text of the August 2, 2011 order, which indicates Appellant's first notice of appeal was timely filed. "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate...." Pa. R.A.P. 902. *See Brown v. Levy*, 993 A.2d 364 (Pa.Cmwlth.2010). That notice of appeal, even if perfected later by Appellant's second notice of appeal, properly invoked this court's jurisdiction. As the Commonwealth did not object to the second notice of appeal or the trial court's acceptance of that notice, and as this Court has all the information necessary to proceed to the merits, we deem it appropriate to reach those merits.

5. On December 2, 2011, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court granted an extension of time to file the 1925(b) response. On January 12, 2012, Appellant filed his concise statement. On February 22, 2012, the trial court filed a Rule 1925(a) opinion.

ord, stating the specific grounds of objection[.]" Pa.R.E. 103(a)(1) (emphasis added).

Pennsylvania Rule of Evidence 106 states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Pa.R.E. 106. The commentary to Pa.R.E. 106 elucidates the rule's underlying rationale:

> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of portions of a writing or recorded statement that are taken out of context. This rule gives the adverse party the right to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the original portion.

Comment to Pa.R.E. 106.

■ "Rule 106 is not an exclusionary rule, but, rather, it merely permits the adverse party to introduce related writings so that the documents originally introduced are not read out of context.... [T]he rule's primary purpose is to correct misleading or impartial [sic] evidence." *Commonwealth v. Passmore*, 857 A.2d 697, 712 (Pa.Super.2004) (internal citation omitted).

■ The admissibility of evidence "depends on relevance and probative value." *Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 117 (2001). Evidence is only considered relevant if it "logically tends to establish a material fact in the case, tends to make a fact at issue

more or less probable or supports a reasonable inference or presumption regarding a material fact." *Id.* at 117–18 (citing *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994)).

■ Appellant contends that the trial court erred when it allowed the jury to view only the one-page diary entry for April 17, 2007, which described the sexual assault. Specifically, Appellant claims that additional entries in the diary should have been submitted to the jury in order to "place[ ] the [one page] into context, and [ensure] a fair and impartial understanding" of that evidence. Brief for Appellant at 11. We find Appellant's claim to be without merit.

The trial court aptly summarized the contents of the diary in question:

> The diary consists of brief, daily entries chronicling the experiences and emotions of a seemingly average young teenage girl. In the diary, [R.M.] described her daily activities and expressed her personal thoughts and feelings. With the exception of the entry dated April 17, 2007, [R.M.] did not once mention [Appellant] nor allude to the sexual assault. Rather, she wrote about her friends, school, and dream of becoming famous. She expressed sadness that her parents were in prison, frustration with her cousin's disciplinary methods, and excitement over her middle school graduation. It is only in the April 17th entry that [R.M.] referred to [Appellant's] misconduct.

T.C.O. at 7–8.

Although Appellant asserts that the entire diary should have been presented to the jury, he fails to make specific reference to any fact or statement in R.M.'s diary that is relevant to this case or would aid the jury, or contradict or otherwise contextualize the April 17, 2007 entry. In his

objection to the exclusion of the diary, Appellant averred generally that there were points in the journal "where something stands out from the rest of the journal in such a way that makes it questionable." N.T., 7/11/08, at 2. Yet Appellant failed to provide any specifics to substantiate, or even render intelligible, this broad assertion. Indeed, Appellant was unable to articulate a single example of a "stands out" or "questionable" entry in the diary beyond general comments related to the presence of "fantasy." *Id.* at 2–3.

Appellant's references to the presence of "fantasy" in R.M.'s diary are insufficient and far too vague to establish relevancy in this case. His bald assertion that "[t]he journal's most personal page was admitted into evidence and the other pages are needed for a complete understanding of the circumstances around that entry" is unsupported by any references to other relevant diary entries. Brief for Appellant at 11. Upon reading the entirety of R.M.'s diary, the trial court concluded that these "other entries provided no explanation for the information contained in the April 17, 2007 entry, nor did they place it in context." T.C.O. at 8.

The burden is on Appellant to specify what the relevancy of the rest of the diary would have been and how it would have aided the jury's understanding. Absent such an argument, and given our deferential abuse of discretion standard, we can discern no basis upon which to reject the trial court's informed observations that "the other entries [would] not serve to avoid misleading the jury nor [would] their admission ensure a fair and impartial understanding of the April 17, 2007 entry." [6] *Id.*

■ Appellant's second issue challenges the weight and sufficiency of the evidence presented at trial to convict Appellant of EWOC.[7] Brief for Appellant, at 12–13.

■ Pennsylvania Rule of Criminal Procedure 607 states, in relevant part, that "[a] claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial" in a written or oral motion before the court prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(a)(1)-(3). Moreover, the comment to the rule clearly establishes that "[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa. R.Crim.P. 607, comment. Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim. *Commonwealth v. Bond,* 604 Pa. 1, 985 A.2d 810, 820 (2009).

■ A careful review of the record has failed to uncover any record action or statement by Appellant or Appellant's counsel prior to sentencing suggesting a challenge to the weight of the evidence. Additionally, Appellant filed no post-sen-

6. In upholding the trial court's discretionary ruling here, we intend no encroachment on the general availability of completeness objections. *See* 7 Wigmore, Evidence § 2113, at 654 (Chadbourn rev.1978)(the "right of the opponent to put in the remainder is universally conceded," subject to the trial court's discretionary authority to determine "the scope and limits of the right" in the case at hand).

7. Although the trial court addressed claims by Appellant challenging the weight and sufficiency of the evidence used to convict Appellant of both EWOC and indecent assault, Appellant's brief contains no reference to a challenge as to the indecent assault conviction. To the extent that Appellant asserts such claims in his argument, they are waived for failure to include them in his Statement of the Questions. Pa.R.A.P. 2116(a).

tence motion that challenged the weight of the evidence. Consequently, Appellant's claims related to the weight of the evidence are waived.[8] *Id.*

■■■■■ Appellant does, however, adequately raise and present his sufficiency claim. Our standard for evaluating sufficiency of the evidence is "whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Watkins,* 577 Pa. 194, 843 A.2d 1203, 1211 (2003) (citing *Commonwealth v. Crews,* 436 Pa. 346, 260 A.2d 771, 771–72 (1970)). "[T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct." *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536, 538–39 (1979). Moreover, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* at 538. "Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence." *Id.* at 539.

■■■■■ In order to convict someone of EWOC, the Commonwealth must prove beyond a reasonable doubt that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age … knowingly endanger[ed] the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a). The statute also provides that

"the term 'person supervising the welfare of a child' means a person other than a parent or guardian that provides care, education, training or control of a child." 18 Pa.C.S. § 4304(a)(3). The Pennsylvania courts have established a three-part test that must be satisfied to prove EWOC:

1) [T]he accused [was] aware of his/her duty to protect the child;

2) [T]he accused [was] aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and

3) [T]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Pahel,* 456 Pa.Super. 159, 689 A.2d 963, 964 (1997) (quoting *Commonwealth v. Cardwell,* 515 A.2d 311, 315 (Pa.Super.1986)).

■■■■■ Appellant contends that he "was not a parent, guardian or other person supervising the welfare of the child, and therefore did not knowingly violate a duty of care, protection or support." Brief for Appellant at 12. Appellant also claims that he was "not in the role of caretaker and had no duty to protect the child." *Id.* at 13. Specifically, Appellant references the fact that he did not permanently reside at the home as evidence that he was not a "person supervising the welfare of the child." *Id.* We find Appellant's assertions to be without merit.

■■■■■ On multiple occasions, we have extended a duty of care to non-relatives who exercise some supervisory role over children. *See Commonwealth v. Trippett,* 932

---

8. Waiver is further supported by Appellant's failure to develop or support his claims related to the weight of evidence at all, beyond listing the claim in the Statement of the Questions Involved and the heading of his second Argument section. Brief for Appellant at 11–

13; *see Commonwealth v. McLaurin,* 45 A.3d 1131, 1139 (Pa.Super.2012) (argument waived for lack of development). Appellant's discussion focuses exclusively on arguments related to the sufficiency of evidence. *Id.*

A.2d 188 (Pa.Super.2007); *Commonwealth v. Vining*, 744 A.2d 310 (Pa.Super.1999). In reviewing EWOC, Pennsylvania courts have long recognized that the legislature attempted to "prohibit a broad range of conduct in order to safeguard the welfare and security of our children." *Commonwealth v. Brown*, 721 A.2d 1105, 1106 (Pa.Super.1998). Furthermore, "[t]he common sense of the community should be considered when interpreting the language of the statute." *Id.* at 1106–07. In *Brown*, we provided the rationale for extending such a duty of care:

> In an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a non-custodial child from the scope of a statute protecting the physical and moral welfare of children. Accepting [A]ppellant's argument would be to accept the idea that this statute is limited to only those persons with permanent, temporary, or other quasi-legal custody of children. The common sense interpretation of the language of the statute and this Court's recent case law do not support such a narrow reading.

*Id.* at 1107.

In *Trippett*, this Court found that there was sufficient evidence to convict an unrelated person of EWOC where that person lived in the same house as the child, provided temporary care to the child, and was the only supervising adult present at the time he committed sexual assault against the child. *Trippett*, 932 A.2d at 192, 194–95. Our opinion in *Trippett* does not in any way indicate the appellant was related to the victim. *Id.* at 192. The appellant simply resided in the house with the victim and her paternal grandmother. *Id.* Moreover, in *Vining*, we found that there was sufficient evidence to convict a person of EWOC where that person did not live with the child, but provided care for the child in the temporary role of a babysitter. *Vining*, 744 A.2d at 313, 315–16.

Appellant argues that he did not owe a duty of care. In support, Appellant cites *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998). However, *Halye* is distinguishable. There, we found that there was insufficient evidence to support a conviction for EWOC where the offender was the third cousin of the victim's mother, sexually assaulted his victim while there were other adults present in the house, was a one-time visitor to the residence where the assault occurred, and never acted as a supervisor or guardian of the child. *Id.* at 764–65.

Regardless of the permanence of Appellant's residency at D.B.'s home, the record reveals that Appellant, a thirty-four-year-old man at the time, and R.M., a thirteen-year-old girl at the time, were frequently present in the residence together alone. N.T., 2/9/11, at 53–54, 111. In fact, the record reflects that Appellant was the sole "adult" present in the home during all of the sexual assaults. N.T., 2/9/11, at 60, 104, 189–90. *See Trippett*, 932 A.2d at 192, 195. This differentiates the instant case significantly from *Halye*, where the offender was a one-time visitor to the home and other adults were present.

Moreover, Appellant's connection with the family caring for R.M. is much closer than the defendant's connection in *Halye*. R.M. testified at trial that she considered Appellant to be a family member. N.T., 2/9/11, at 89. Appellant knew R.M. since R.M. was five years old. N.T., 2/9/11, at 176. Appellant's testimony reveals that he was at the home "four, maybe five different days out of the week" to visit with his mother (D.B.), and to eat with the family. N.T., 2/9/11, at 188. Appellant testified that he occasionally picked R.M. up from

school when an adult was required to get her. N.T., 2/9/11, at 179. Additionally, Appellant's statements indicate that he was involved in the care of R.M. by imploring D.B. to "give [R.M.] a break" and by taking a special interest in R.M.'s development. *Id.* at 201–03. Although Appellant was not a parent or guardian of R.M., he was "an extension of [D.B.'s] family who provided care for and/or control of R.M.," as the trial court correctly pointed out.[9] T.C.O. at 10.

Based on the record, there was sufficient evidence for the jury to find that Appellant owed a duty of care to R.M. and violated that duty when he sexually abused her.

Judgment of Sentence affirmed. Jurisdiction relinquished.

9. Appellant also testified to a potential familial connection between himself and R.M., specifically claiming that he and R.M.'s father are first cousins and that R.M. is his "little cousin." N.T., 2/9/11, at 195, 202.