J-S12013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY BROWN, | |
| Appellant | No. 54 EDA 2014 |

Appeal from the Judgment of Sentence November 22, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002243-2011

BEFORE:  BOWES, SHOGAN and FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 18, 2015**

Anthony Brown appeals from the judgment of sentence of life imprisonment.  We affirm.

On November 22, 2013, a jury convicted Appellant of first degree murder and possession of an instrument of crime ("PIC") in connection with the October 9, 2009 shooting death of his brother, Rodney Brown.  This appeal followed imposition of sentence immediately after the jury's verdict.  Appellant raises these issues on appeal:

> I. Is the Defendant entitled to an arrest of judgment on the charge of Murder in the First Degree and PIC, where the Commonwealth utterly failed to prove its case and where there is insufficient evidence to sustain the verdict and all where the Commonwealth did not prove that the Defendant was the perpetrator of the crime?

---

* Former Justice specially assigned to the Superior Court.

II. Is the Defendant entitled to a new trial on the charge of Murder in the [First] Degree and PIC, where the greater weight of the evidence does not support the finding of the jury?

Appellant's brief at 3.

Initially, we outline our standard of reviewing the sufficiency of the evidence.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 2014 WL 7447678, 7 (Pa.Super. 2014) (citation omitted).

In this case, Appellant concedes that the evidence establishes "all of the elements involved in Murder One," but he maintains that the "Commonwealth did not prove that this Defendant was the perpetrator of the crime." *Id*. at 9. The trial court herein provided an exemplary and

meticulous outline of the evidence presented against Appellant. A brief summary of that proof is all that is necessary to dispel the validity of Appellant's position in this appeal.

Appellant, Rodney, and two of Rodney's three children lived at 2143 Ellsworth Street, Philadelphia. The residence had been owned by their mother, Dorothy, who died in 1985. Rodney was named the executor of Dorothy's estate, and Rodney lived at the home from 1985 until his October 9, 2009 murder. A few years prior to the crime, Appellant moved into the basement of the house.

Many witnesses testified about Appellant and Rodney's acrimonious relationship and how they continually argued about the house and money. In 2006, Appellant forged a document that gave him the power to administer his mother's estate, he deeded 2143 Ellsworth Street to himself, and he secured a $177,000 mortgage on the property. Rodney became aware of the fraud after receiving a foreclosure notice due to Appellant's default under the mortgage. Rodney obtained legal representation over the situation, and, in April 2009, Rodney's lawyer sent a letter to Appellant informing him that he had illegally obtained title to the real estate. A copy of the letter was forwarded, *inter alia*, to the district attorney's office.

The day that Appellant received the letter, he engaged in conduct that led Rodney to secure a protection from abuse order ("PFA"). As the PFA did not expel Appellant from his home, the two brothers continued to reside

together. A few months prior to the murder, Appellant asked Sharon Keys, Rodney's girlfriend, whether she could take care of Rodney's three children if something happened to Rodney.

The residence at 2143 Ellsworth Street had a front and back door and a security system that sounded if either door was opened. The system was not linked to police but merely alerted its occupants of the opening of a door. Rodney's best friend and his girlfriend both testified that the doors to the home always were locked and that the home security system always was activated.

Rodney's son, Rodney Jr., testified as follows. On the night of October 9, 2009, his father came home at about 11:30 p.m. As always, the security system sounded. Rodney Jr. came down to greet his father, who embraced him and put him back to bed on the third floor of the residence. Rodney Jr. then heard gunshots. Before the shots were fired, the alarm system had not activated. Rodney Jr. went downstairs, saw his father on the kitchen floor, and observed Appellant outside the front door knocking on doors and asking for help. After the gunshots were fired, Appellant called police. When police arrived, Appellant was outside the house with a group of people.

The victim was shot four times and died as a result of two gunshots to his chest. The murder weapon was found on the roof of a residence two houses down from 2143 Ellsworth Street. A neighbor heard sounds emanating from that same roof several minutes after the shooting.

- 4 -

Appellant went to the police station where he was interviewed as a witness and gave the following statement regarding the events surrounding Rodney's death:

> I was in the basement lying down when I heard this loud banging at the front door. Then I heard fast footsteps going toward the backdoor, then I heard about three gunshots coming from upstairs. I stood up and then I went upstairs. I opened up the basement door and looked to the right and saw that the front door was open. Then I took an extra step forward and looked to my left and saw the backdoor open . . . .
>
> I then walked toward the kitchen and saw Rodney on the floor gasping for air. Then I ran back downstairs to the basement to get my cell phone. I then dialed 911. Then I ran outside and started hollering for help.

N.T. Trial, 11/20/13, at 195. Appellant gave a second interview to police and his second statement was consistent with the exception that he said that he heard running before and after the murder and observed damage to the front door's frame. In neither statement did Appellant indicate that he touched or attempted to aid the decedent. Police testified that there was no damage to the front door of the house and that the alarm was disabled when they arrived.

Appellant gave police the clothing, including a grey hooded sweatshirt, that he was wearing on the night of the murder. The Commonwealth presented a forensic scientist, Mr. Gamal Elmira, who tested a grey sweatshirt from Appellant. Mr. Elmira first explained that, when a gun is fired, it expels residue consisting of fine particles of barium, lead, and

antimony. Some of this residue is propelled forward, but the majority of those particles travel backward toward the shooter through a gap in the gun. When the gun is shot, this residue lands on the shooter's hand and sleeves. Appellant's sweatshirt had an extremely high amount of gun residue on the cuff and sleeves of both arms of the sweatshirt. This evidence was consistent with Appellant having fired a gun using both hands.

Appellant's specific argument on appeal is that his convictions are infirm because there were no eyewitnesses who "came forward to say that they saw this Defendant shoot the victim." Appellant's brief at 10. Appellant's position, then, is that the perpetrator of crime cannot be convicted absent eyewitness testimony. This position is unsound. As recited *infra*, the Commonwealth can establish its case entirely through circumstantial evidence, and convictions are upheld when there was no eyewitness testimony. ***See***, ***e.g.***, ***Commonwealth v. Lyons***, 79 A.3d 1053 (Pa. 2013).

Herein, Appellant and the victim were the only adults in the house when the shooting occurred. They had an acrimonious relationship, and the victim had contacted the district attorney's office about Appellant's fraudulent activities surrounding the transfer of title to 2143 Ellsworth Street. The decedent had a PFA against Appellant. Appellant made an incriminating statement, which indicated that Rodney would not be alive to

care for his children, to Rodney's girlfriend a few months prior to the murder.

Appellant's story about how the murder occurred was inconsistent with other Commonwealth evidence. While Appellant claimed that both doors to the home were opened and an intruder had murdered his brother, witnesses established that, if that were the case, the alarm system would have sounded. Rodney Jr. testified that the door alarm did not sound before the shots were fired, even though it did when Rodney arrived home. Appellant said that the front door was damaged, but police witnesses contradicted that report. Most significantly, Appellant had an extremely high amount of gun residue on his sweatshirt that established that he fired a gun.

Appellant attempts to discount the incriminating nature of the gun residue on the sweatshirt that he was wearing the night of the murder. He claims that Mr. Elmira supported that there were two scenarios, other than firing a weapon, under which the gun residue could have been on his sweatshirt. Our review establishes that Mr. Elmira testified that there were three explanations for the level of gun residue on the sleeves and cuffs of Appellant's sweatshirt: Appellant fired the gun, "was in close proximity to someone firing a gun," or he had "contact with a surface having gunshot residue." N.T. Trial (Jury), 11/21/13, at 64. Mr. Elmira was asked:

> If the person wearing this gray sweatshirt that you tested was in the basement at the time that shots were fired in the kitchen and did not come up until after those shots were done being

- 7 -

fired, is that in you're your opinion, close proximity that would leave gunpowder residue on both sleeves?

*Id*. at 65.  The witness responded, "No. Close proximity is usually in the same room."

Thus, Mr. Elmira's testimony, when viewed in conjunction with Appellant's statement to police, actually supports that Appellant perpetrated the crime.  Appellant said that he was not in the room when the gun was fired.  He never indicated that he went anywhere near his brother's body.  Appellant's statement leaves only one scenario: Appellant shot his brother.  Hence, we reject Appellant's challenge to the sufficiency of the evidence.

Appellant also claims that the verdict was against the weight of the evidence.  As we observed in *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa.Super. 2012),

> Pennsylvania Rule of Criminal Procedure 607 states, in relevant part, that "a claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial" in a written or oral motion before the court prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(a)(1)-(3). Moreover, the comment to the rule clearly establishes that "the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, comment. Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim. *Commonwealth v. Bond*, 604 Pa. 1, 985 A.2d 810, 820 (2009).

We have reviewed the record.  Appellant did not make an oral motion on the record prior to sentencing that the verdict was against the weight of

the evidence. Additionally, Appellant failed to file a post-sentence motion. Hence, this claim is waived. *Id*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2015