J-S40010-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OZELL THOMAS | : | |
| | : | |
| Appellant | : | No. 1668 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 10, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005303-2017

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: FILED DECEMBER 06, 2019

Ozell Thomas appeals from the judgment of sentence imposed following his convictions for aggravated assault, simple assault, recklessly endangering another person ("REAP"), and endangering the welfare of children ("EWOC").[1] Thomas argues the Commonwealth failed to present sufficient evidence to establish that he acted with the requisite mens rea. We affirm.

The charges in this case arose from an April 2017 incident in which Thomas threw his son across a room. At Thomas's bench trial, his son ("victim") testified that he was visiting Thomas on the weekend of the incident.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(9), 2701(b)(2), 2705, and 4304(a)(1), respectively.

N.T., 8/9/18, at 8.[2] He, his brother, D.S., and a cousin were engaged in "horseplay" in an upstairs bedroom. Id. The victim said that Thomas came upstairs, and, when the victim would not stand up, grabbed the victim by his shirt and threw him across the room:

> [Thomas] came upstairs with a broom and I thought that he was going to hit me.
>
> So he was just walking up and I started backing up between my arms on grandma's bed on the edge. I sat down and he says, get up, and I didn't want to because I thought he was going to hit me with the broom.
>
> Then he grabbed me by my shirt and threw me across the room. I tried to save myself from the broom and he waited for me to touch the floor, so I guess that my wrist bent the other way.

Id. at 8-9. The victim testified that his wrist "started cracking," "hurt really bad," and he "felt like [he] was going to throw up." Id. at 9. Thomas told the victim to stop crying. Id. The following day, his paternal grandmother bought him "muscle rope" and wrapped his arm. Id. at 20. The victim did not go to the hospital until he was back in his mother's care. Id. at 10. When he went to the hospital, they put a cast on his arm, which he had on for three to four weeks. Id. at 10.[3]

_____

[2] The victim testified that he was ten years old at the time of the trial, which was in August 2018. N.T., 8/9/18, at 5. The victim was therefore nine at the time of the incident, in April 2017.

[3] The testimony is unclear as to when the accident occurred, but it appears that the victim's arm was injured on a Saturday, and he went to the hospital on the following Monday.

Although the victim was unable to put a number on the distance that Thomas threw him, he stated it was farther than the distance between himself and the place where the "young lady in a greenish dress" was sitting, and was about the distance between himself and a stack of papers on a table. Id. at 19-20.

The Commonwealth admitted into evidence the victim's medical records, which stated that victim had suffered a "left wrist fracture, which caused substantial pain, impairment, and he could not use his left arm normally." Id. at 26.

Thomas testified in his own defense that both he and the victim's grandmother were sick the weekend of the incident. Id. at 50. The kids were playing, and were "being a little loud, but it was getting to the point that it was becoming extreme." Id. He testified that he went upstairs with a broom in his hand and was hitting a chair that was under the window with the broom to try to calm the kids. Id. D.S. and his cousin stood by the door, but the victim tried to squeeze under the bed. Id. Thomas said that he grabbed the victim by his t-shirt and "gave him a suggestive nudge." Id. at 51. He denied throwing him across the room. Id. Rather, according to Thomas, the victim jumped onto the bed, bounced off, and fell onto his hands. Id. He "basically rolled his wrist and his arm" and Thomas "didn't think it was that severe." Id.

Thomas claimed that he called the victim's mother and told her that he was going to come get her so that they could take the victim to the hospital, but the mother said that she would come the next day. Id. He claimed that

the victim's mother came to the house the next day, and she agreed that it was not that serious. Id. at 52. He stated that the next day the victim was still running and playing, and he did not see a reason to take him to the hospital. Id. at 54. Thomas stated that he and the victim's grandmother put a bandage on the arm "just as a precaution." Id. at 57.

The trial court, as fact-finder, credited the victim's testimony, and found Thomas guilty:

> Well, it seems to me that the Defendant in this case was sick and irritated and he was upset. He admits pulling [the victim] by his T-shirt and I question the credibility of the Defendant because he is portraying his wrist to be normal, even though the doctor says that he cannot use his left arm normally.
>
> He had a broom and he hit on some bath towels to gain attention, although [the victim's brother] did not see the broom, and I think that [the victim's brother] was encouraged to testify to what he did because the Defendant is his father.
>
> I find [the victim] is credible, well spoken and consistent. I am not sure that the Defendant meant to break [the victim's] arm, but he did so at least recklessly because I find as a matter of fact that he picked up the child and threw him resulting in the break of his wrist.
>
> There is no question that his wrist was broken. The medical records also say that they suspect child abuse. So I find the Defendant guilty of all charges.

Id. at 58-59.[4]

_____

[4] The Honorable Donna Jo McDaniel presided over this trial, and found Thomas guilty. Judge McDaniel retired after trial, but prior to issuing an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925. Therefore, another judge from Allegheny County issued the Rule 1925(a) opinion.

The trial court sentenced Thomas to 11 months 15 days to 23 months' incarceration, followed by one year restrictive intermediate punishment. The court also imposed a concurrent term of three years' probation. Thomas filed a timely Notice of Appeal.

He raises the following issues:

> I. Whether the evidence is insufficient to sustain Mr. Thomas's convictions for Aggravated Assault, Simple Assault, and Recklessly Endangering Another Person when the evidence adduced at trial showed only a negligent accident, not a conscious disregard for a substantial risk to the complainant's safety?
>
> II. Whether the evidence is insufficient to sustain Mr. Thomas's conviction for Endangering the Welfare of a Child when the Commonwealth failed to prove, beyond a reasonable doubt, that Mr. Thomas acted knowingly to endanger the complainant's welfare?

Thomas's Br. at 5.

Thomas first argues that the Commonwealth failed to present sufficient evidence to support the aggravated assault, simple assault, and REAP convictions because the evidence at most showed that the incident was a negligent accident, not that Thomas acted with criminal recklessness. He maintains that the trial court used "false logic" to find sufficient evidence because it relied on the fact that Thomas's actions caused a fractured wrist, to conclude he acted recklessly. Thomas's Br. at 14-15. Thomas argues that his "momentary lapse" was not undertaken "with a conscious disregard of a substantial risk to [the victim's] safety." Id. at 18.

To establish a defendant committed aggravated assault under Section 2702(a)(9), the Commonwealth must establish the defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] serious bodily injury to a child less than 13 years of age," and was "a person 18 years of age or older." 18 Pa.C.S.A. § 2702(a)(9). To support a conviction of simple assault of a child, the Commonwealth must prove the defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another" where the assault was "against a child under 12 years of age by a person 18 years of age or older." 18 Pa.C.S.A. § 2701(a)(1), (b)(2). To support a conviction for REAP, the Commonwealth must prove the defendant "recklessly engage[d] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

The Crimes Code defines "recklessly" as:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

The victim's testimony supports the finding that Thomas acted recklessly. Contrary to Thomas's suggestion, we do not conclude that the evidence was sufficient to support a finding of recklessness merely because the victim suffered a broken wrist. Rather, we base our conclusion on all of

- 6 -

the evidence against Thomas, which was considerable. The victim testified that Thomas picked him up by his shirt and threw him across the room, and described in his testimony, and the fact-finder saw, the distance Thomas threw him. The court also saw both Thomas, an adult male, and the victim, a nine-year-old boy, and therefore was able to discern any size disparity between them. The evidence here, including the victim's testimony, when viewed in the Commonwealth's favor, as verdict-winner, supports the finding that Thomas should have known that he could cause serious bodily injury by throwing a nine-year-old child across a room. See Commonwealth v. Cassidy, 668 A.2d 1143, 1147 (Pa.Super. 1995) (concluding appellant's "act of picking up his wife and throwing her with such force that she bounced off the doorjamb, struck another door frame, and finally fell to the ground" was sufficient to prove recklessness).

Thomas next argues his EWOC conviction "must be vacated because the Commonwealth failed to prove beyond a reasonable doubt that [he] acted 'knowingly' to endanger [the victim], either during the initial incident or through choosing to treat [the victim's] injuries at home." Thomas's Br. at 12. He claims he did not knowingly create a risk of injury by not taking the victim to the hospital, because he "[did] not have any formal medical training, and he relied on his personal knowledge and experience to examine [the victim's] injuries and determine how to treat them." Id. at 13. He cites in support Commonwealth v. Pahel, 689 A.2d 963 (Pa.Super. 1997).

To support a conviction for EWOC, the Commonwealth must establish that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age . . . knowingly endanger[ed] the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). EWOC thus has three elements:

> 1) [T]he accused [was] aware of his/her duty to protect the child;
>
> 2) [T]he accused [was] aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and
>
> 3) [T]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

Commonwealth v. Bryant, 57 A.3d 191, 197 (Pa.Super. 2012) (quoting Pahel, 689 A.2d at 964).

In Pahel, this Court found the evidence did not support a finding that the appellant knowingly failed to seek medical attention for a nasal fracture. 689 A.2d at 967. In that case, the appellant had not known how the child had injured his nose. Id. at 966. The attending physician was asked whether the injury constituted a "emergency situation," and responded "not necessarily." Id. Further, after the doctor discovered a nasal fracture, he did not see a need to administer medication or a splint. Id. Further, an expert testified that the child was "potentially" endangered by the failure to seek treatment. Id. at 964. We noted that "[t]he fact that a medical professional was able to evaluate the child's injuries and conclude that the failure to obtain prompt medical

attention 'potentially' endangered the child's welfare" did not establish that "the appellant had 'knowledge' that delay in seeking medical treatment placed the child at risk or that the appellant was aware of the potential consequences of her actions." Id. at 966-67.

Here, the trial court concluded:

> [Thomas] was certainly aware of his duty, as a father, to protect his [9]-year[-]old son when his son was in his custody. The record also established that [the victim] had suffered a severe injury to his arm that required medical attention. [Thomas] admitted that he considered taking [the victim] to the hospital but decided not to after talking to [the victim's] mother, claiming that she "agreed" with him that it was not serious enough to require a trip to the hospital. Setting aside for this discussion the question of whether or not this particular part of [Thomas'] testimony was believed by Judge McDaniel in light of her comments regarding the credibility of the defendant, the fact remains that [Thomas] was the person with custody of [the victim] at [the] time the decision was made to not seek medical care. He was the person who knew what happened and could observe the injury. His son had a broken arm that required immediate medical attention and [Thomas], alone, had the obligation to secure that care. His failure to do so violated the duty of care he owed to his son and was sufficient to support the verdict of guilty as to the EWOC charge.

Trial Court Op., filed Feb. 13, 2019, at 11. We agree with the trial court.

The evidence presented at trial was sufficient to prove that Thomas was aware of his duty to protect the victim, knew that the victim was injured and in pain, and failed to obtain the medical treatment the victim needed. Here, when the victim hit the ground, his wrist bent backwards and the victim heard cracking. He was crying and Thomas told him to be quiet. Further, Thomas

claimed he called the victim's mother so that she could take the victim to the hospital and she said she would come the next day.

Regardless whether this conversation happened, and unlike the appellant in Pahel, Thomas's own testimony shows that he knew the victim needed medical attention, and yet he failed to obtain it. Further, in Pahel, the child did not need medication or a splint for the facture, and the doctor testified the failure to obtain prompt medical attention "potentially" endangered the child's welfare. Here, the victim suffered a broken wrist and was in a cast for three weeks. The evidence here supported a finding that Thomas knew the victim needed medical attention and he failed to obtain it.

Judgment of sentence affirmed.[5]

Judge Pellegrini joins the Memorandum.

President Judge Emeritus Bender files a Concurring/Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2019

_____

[5] On August 22, 2019, Thomas' counsel from the Allegheny County Office of the Public Defender, Anne Puluka, filed a petition for leave to withdraw as counsel. She stated she was resigning from her position at the Office of the Public Defender, and that Brandon Ging from that Office will remain as counsel. We grant this petition.