J-A23039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
PATRICIA J. GALLOW　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　Appellant　　　　　　　:　No. 2960 EDA 2019

Appeal from the Judgment of Sentence Entered March 28, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000771-2016

BEFORE:  KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　**FILED NOVEMBER 17, 2020**

Patricia J. Gallow (Gallow) appeals from the judgment of sentence imposed by the Court of Common Pleas of Chester County (trial court) after a jury convicted her of two counts of theft by deception.  Gallow challenges the sufficiency and weight of the evidence, as well as the discretionary aspects of her sentence.  We affirm.

**I.**

In 1995, Gallow's mother, Patricia J. Gallow (Mother), who has the same name as her daughter, became the owner by deed of a parcel of land in

---

[*] Retired Senior Judge assigned to the Superior Court.

Phoenixville, Chester County.[1]  The parcel is subdivided between two adjoining properties with houses:  681 Schulykill Road, where Mother lived; and 687 Schulykill Road (687 property), where Gallow lived.  Gallow began renting the 687 property in 1992 and remained a renter until leaving in 2019; there is no dispute that Mother never formally transferred ownership of the 687 property to Gallow.

In February 2005, Gallow executed a mortgage and note in the principal amount of $125,000 in favor of Washington Mutual Bank on the 687 property. Despite not being the record owner of the property, Gallow obtained the mortgage by attesting that she was "Patricia J. Gallow" under the 1995 deed to the property.  Gallow did the same thing in November 2006 when she entered into a loan agreement with Countrywide Bank for $122,000 secured by the 687 property.  Again, as she did in the first mortgage, Gallow signed documents representing that she owned the 687 property.

Mother learned of the mortgages in November 2014 when she received a phone call from one of the banks because Gallow had fallen behind on her mortgage payments.[2]  After confirming the mortgages at the recorder of

---

[1] The parcel passed to Mother and her brother in 1993 after their Father died. Mother became the sole owner in 1995 after her brother transferred his interest in the parcel to her.

[2] Because of the missed payments, mortgage foreclosure proceedings have been instituted against the 687 property, with Mother being joined as a co-defendant with Gallow.

deeds, Mother notified the police. In July 2015, Gallow was charged with, among other offenses, theft by deception for obtaining the mortgages by creating the false impression that she was the record owner to the 687 property under the 1995 deed.

Before trial, in an effort to have the charges dismissed, Gallow provided the Commonwealth with photocopies of three checks that Mother signed between February and March of 2014 when she worked at Gallow's hair salon. Significantly, each check's memo line indicated that it was for the mortgage on the 687 property, implying that Mother knew about the mortgages. However, in the original checks obtained from the bank, it became apparent that the mortgage information had been added because there was nothing in the memo lines about the mortgage. This led the police to obtain a search warrant for the 687 property. There, the police found the original photocopies of the checks with the mortgage information altered with whiteout.

Gallow was tried by a jury in November 2018. Mother reaffirmed that despite Gallow asking several times, she never gave permission for the mortgages. Mother also disavowed that she ever knew about the mortgages before November 2014. In contrast, Gallow testified in her own defense that Mother not only knew but also helped obtain the mortgage in 2005 in order to

improve the 687 property.[3]  Because Gallow was unfamiliar with mortgages, Mother helped her with the process and even accompanied her to the closing. Gallow maintained the same about the 2006 mortgage, testifying that they needed more money for the renovations.  To support this claim, Gallow called several witnesses to testify that Mother told them that she had given Gallow the 687 property.

The jury convicted Gallow of two counts of theft by deception:  (1) creating or reinforcing a false impression and (2) failing to correct a false impression.[4]  The trial court merged both counts for sentencing purposes and ordered Gallow to serve one year less a day to two years less a day imprisonment, followed by a consecutive five years' probation as well as requiring her to pay $277,407.62 in restitution.  After sentencing, Gallow filed a timely post-sentence motion, which the trial court denied.[5]  Gallow timely appealed.

---

[3] Gallow claimed that the decision to obtain the 2005 mortgage was agreed to by Gallow's sister and brother.  Neither was called as a witness at the trial.

[4] 18 Pa.C.S. § 3922(a)(1) and (a)(3).  The jury also found that the value of the property for each count was more than $100,000, making both offenses second-degree felonies.  *See* 18 Pa.C.S. § 3903(a)(5).  The jury acquitted Gallow of the only other remaining offense, receiving stolen property; the trial court previously dismissed theft by unlawful taking.

[5] The trial court initially denied the post-sentence motion as untimely but vacated its order when it learned that the clerk of courts had erroneously rejected Gallow's electronically filed motion for non-compliance with the electronic signature requirements under Pa.R.Crim.P. 576.1(F).

**II.**

Gallow first challenges the sufficiency of evidence for her theft by deception convictions, arguing that the Commonwealth failed to present sufficient evidence of *mens rea*, namely, that she ever intentionally mislead or deceived anyone in obtaining the mortgages, despite not being the record owner of the 687 property.[6]

The Pennsylvania Crimes Code defines theft by deception as follows:

(a) Offense defined.--A person is guilty of theft if he intentionally obtains or withholds property of another by deception.  A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

---

[6] In reviewing the sufficiency of the evidence, we consider:

whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt.  The entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct.  Moreover, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Bryant***, 57 A.3d 191, 197 (Pa. Super. 2012) (citations, quotation marks and brackets omitted).

* * *

> (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

18 Pa.C.S. § 3922. "A person is guilty of theft by deception if he intentionally obtains property from another by deception. The Commonwealth must prove that the victim relied upon the false impression." **Commonwealth v. McSloy**, 751 A.2d 666, 669 (Pa. Super. 2000).

At trial, there was no dispute that Gallow obtained the proceeds of the mortgages by executing documents by attesting that she was "Patricia J. Gallow" under the 1995 deed; Gallow herself admitted that she did so. N.T., 11/16/18, at 186-87. This not being in dispute, the main factual question at trial was whether Gallow obtained the mortgages with an intent to deceive, specifically, whether she created the false impression that she was the owner of the 687 property or had the permission of Mother.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence to establish that Gallow had an intent to deceive. Mother testified that she never gave Gallow permission to take out the mortgages, nor that she was involved or ever accompanied Gallow in obtaining the mortgages. N.T., 11/14/18, at 128-29, 135-36. Moreover, Brian Haines, the manager of the title company involved in the 2005 mortgage, explained that Gallow would not have been allowed to sign for the mortgage if she disclosed that she was not "Patricia J. Gallow" under

the 1995 deed. *Id*. at 58, 72-73. This testimony ran directly contrary to Gallow's version of events and established that the mortgages were given only because she created and reinforced the false impression that she owned the 687 property under the 1995 deed.

Additionally, the Commonwealth admitted into evidence the three checks that Gallow submitted purporting to show that Mother knew about the mortgages. *Id*. at 203. As later discovered, each check had whiteout applied to the memo line with writing added that was not in the original check. Mother admitted that she filled out the checks and signed them but denied that the writing in the memo lines was hers. N.T., 11/16/18, at 5. Gallow admitted that she applied the whiteout and added the writing but claimed she did so only because her attorney asked her to add information about the purpose of the checks. *Id*. at 177-79. These checks, when viewed in the light most favorable to the Commonwealth as verdict winner, could lead the jury to infer that Gallow altered the checks and submitted them to deceive the Commonwealth into believing that Mother knew about the mortgages; the jury was not obligated to believe Gallow's explanation.

Against all this, Gallow argues that there was insufficient evidence to convict her because the Commonwealth's evidence was "inconsistent and unreliable." Gallow's Brief at 19. In effect, Gallow is asking us to credit her version of events despite our established standard of review, which we cannot do under our standard for sufficiency review.

First, Gallow's claim relies heavily on her assertion that the only evidence that Mother did not authorize the mortgages came from Mother herself. Gallow's Brief at 21-22. This contention, however, ignores the testimony of the manager of the title company. As noted above, he explained that Gallow's version of events—that she was allowed to obtain the mortgages without being the record owner of the 687 property—could not have happened. As a result, besides Mother's testimony that she was neither involved nor authorized the mortgages, the jury had independent testimony from someone that the only way Gallow could have obtained the mortgages was by creating a false impression that she owned the 687 property.

Next, Gallow highlights that she presented three witnesses who claimed hearing Mother say that she gave the 687 property to Gallow. First, Stephanie Alexy testified that she sold a health insurance plan to Gallow for Mother in January 2014 and, during one of their meetings, she heard Mother say that she gave Gallow the house on the 687 property. Similarly, Patrick Layne helped put an addition on the 687 property and, while doing construction at the property, heard Mother say that they needed to get a second mortgage to pay for the work. Finally, Gallow's son, Zachary Gallow, testified that Mother told him several times that the 687 property belonged to him and Gallow.

The jury was free to judge the credibility of these witnesses, particularly Stephanie Alexey and Patrick Layne, and credit Mother's testimony that she never told anyone that she gave Gallow the 687 property. N.T., 11/14/18, at

128. Moreover, Zachary Gallow testified that Mother said the 687 property was "basically me and my mom's house." N.T, 11/16/18, at 80. This is not the same thing as Mother affirmatively stated that she transferred ownership over to Gallow. In fact, Zachary Gallow's testimony was consistent with Mother's explanation that she eventually intended to sign over the 687 property to Gallow and her son before she died. N.T., 11/14/18, at 136.[7]

Gallow also highlights a handwritten letter that was admitted at trial. That letter, which was dated March 11, 2005, requested the title company to issue Gallow another check because the first one was made out to the wrong person. Mother admitted that she wrote the letter but claimed that Gallow dictated it to her and that she was unaware of the purpose of the letter, which did not reference the mortgage. N.T., 11/16/18, at 7-9. Gallow testified that she signed the letter but claimed that she did not know what it was for because Mother handled the whole process. *Id*. at 158-59. Again, the jury credited

---

[7] Mother admitted that there was an agreement in writing with Gallow that the 687 property would pass to her and her son when she died, but this agreement was destroyed in 2010 when there was a fire at Mother's home. N.T., 11/14/18, at 180. Gallow claimed that the agreement transferred ownership but was never made official before the fire in 2010. N.T., 11/16/18, at 192. Similar to the other points that Gallow raises in her sufficiency argument, the jury was not obligated to credit her version.

Mother's testimony over Gallow's and concluded that Mother did not know about the 2005 mortgage at the time Gallow obtained it.[8]

Finally, Gallow asserts that Mother must have known about the mortgages because (1) she was aware of the renovations and construction on the 687 property; and (2) she helped with bookkeeping at Gallow's hair salon and knew about her finances. Gallow's Brief at 23. As to the construction, Mother was aware of the construction on the 687 property but claimed that she did not know it was being funded by mortgage proceeds. N.T., 11/14/18, at 191. As to the bookkeeping, this is an argument that was properly directed to the jury, who was free to believe or disbelieve, based on all the evidence as to whether Mother knew about the mortgages. As discussed above, the jury concluded that she did not, and we are bound under our standard for sufficiency review not to disturb that determination. Accordingly, Gallow's first claim fails.

### III.

Next, in the alternative, Gallow argues that she should receive a new trial because her convictions were against the weight of the evidence. Gallow

---

[8] In a special interrogatory in its verdict sheet, the jury found beyond a reasonable doubt that Mother did not know about the mortgage before July 27, 2010, which was asked because of the statute of limitations for the remaining charges. N.T., 11/16/18, at 214-15.

preserved this claim in the trial court, raising it in her post-sentence motion.

See Pa.R.Crim.P. 607.[9]

_____

[9] In **Commonwealth v. Soto**, 202 A.3d 80, 97 (Pa. Super. 2018), we explained:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

(Citations and quotation marks omitted).

Gallow's argument relies on her belief that Mother granted her ownership of the 687 property and that she never intended to deceive anyone in obtaining the mortgages. Portraying herself as legally unsophisticated, Gallow again emphasizes that her witnesses testified that Mother said she gave ownership to Gallow. Likewise, Gallow rehashes her argument that Mother was involved in her finances and knew about the renovations to the 687 property. Gallow also dismisses the importance of the altered checks, arguing that an intent to deceive cannot be inferred from the obvious alterations which were meant for her attorney.

After review of the record and under our deferential standard of review, we find no abuse of discretion in the trial court's decision to deny relief on Gallow's weight claim. Like her sufficiency argument, Gallow sidesteps the Commonwealth's evidence that she would not have been able to obtain the mortgages without misrepresenting that she was "Patricia J. Gallow" under the 1995 deed and was the record owner of the 687 property. Beyond that, we do not find that the alleged brief comments by Mother that she "gave" the house to Gallow overwhelm Mother's own testimony that she never formally transferred ownership of the 687 property over to Gallow.

Moreover, Gallow's speculation that Mother must have known about the mortgages is just that—speculation. Significantly, in her brief, Gallow fails to provide any record citations of evidence presented during trial clearly proving that Mother learned of the mortgage proceeds while helping with the

bookkeeping of Gallow's hair salon. Finally, we find Gallow's argument as to the checks—that the incompetence and the obviousness of the alteration itself proves that they were not submitted to deceive—to be unpersuasive. Accordingly, no relief is due.

**IV.**

In her final claim, Gallow alleges that the trial court relied on an improper factor in its sentence: her inability to pay restitution. Specifically, Gallow observes that trial courts are prohibited from ordering imprisonment "for failure to pay restitution if the failure results from the offender's inability to pay." 18 Pa.C.S. § 1106(c)(2)(iii).

Gallow's claim implicates the discretionary aspects of sentencing. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). To determine whether an appellant has invoked our jurisdiction, we consider the following four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (citations omitted).

- 13 -

Gallow filed a timely appeal and preserved her sentencing issue in a timely post-sentence motion. She has also included a statement of reasons relied upon for this challenge to the discretionary aspects of this sentence as required by Pa.R.A.P. 2119(f). Lastly, her allegation that the trial court relied on an improper factor in sentencing raises a substantial question. *See Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa. Super. 2010) (concluding that the appellant's "claim the trial court relied on an improper factor raises a substantial question permitting review"). We address the merits of her claim.[10]

> The trial court's comments at sentencing were as follows:
>
> I have considered all the sentencing alternatives that are available to me, including the imposition of no sentence all the way up to the imposition of total confinement. I find total confinement is warranted, it would otherwise depreciate the seriousness of the crime.
>
> Not only was the victim here your mother, but with the mortgage foreclosure action pending -- and your mother appears to me to be retired with very limited governmental benefit income coming in, she is going to lose that house. **Because there are two mortgage foreclosure actions pending now, I see no way of paying off those amounts.**

---

[10] "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (quotation omitted).

N.T., 3/28/19, at 63 (emphasis added).

Gallow's argument relies on the trial court's final comment, arguing that the trial court decided to impose incarceration based on her inability to pay the restitution. Gallow's Brief at 32. Gallow's argument, however, isolates the comment from the trial court's full explanation that it was relying on the impact to Mother, not to mention the trial court's finding that incarceration was warranted so as not to lessen the seriousness of the offense.

Under 42 Pa.C.S. § 9721(b), a sentencing court is statutorily required to consider the following factors when imposing a sentence: the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. Here, the trial court's observation that Gallow is unable to pay off the mortgages, when read in context, is an extension of its reasons for imposing incarceration, namely, the impact that her actions had on her Mother, which is proper under section 9721(b). Significantly, the trial court recognized Gallow's action not only deleteriously affected her very own mother, but also had the impact of encumbering the 687 property with two mortgages that may result in Mother losing the property. This being the case, we cannot conclude that the trial court relied on an improper factor and abused its discretion in sentencing Gallow to incarceration.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/17/2020</u>