J-S23025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WILLIAM G. WHITE JR. :
:
Appellant : No. 1726 EDA 2024

Appeal from the Judgment of Sentence Entered May 30, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002959-2022

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 28, 2025**

William G. White, Jr. (Appellant), appeals from the judgment of sentence imposed after a jury convicted him of three counts of possession of a controlled substance, and two counts each of possession with intent to deliver a controlled substance (PWID) and conspiracy to commit PWID.[1] Appellant's counsel, Arley L. Kemmerer, Esquire (Counsel), has filed a petition to withdraw from representation and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). After careful consideration, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

_____

[1] 35 P.S. § 780-113(a)(16), (30); 18 Pa.C.S.A. § 903.

On May 8 and 9, 2020, police conducted two controlled purchases of narcotics involving Appellant and his co-defendant, Michael Breeland (Breeland). On each occasion, Paul Barr (Barr), a cooperating informant, made cell phone contact with Breeland to arrange the purchase of narcotics. At Breeland's direction, Barr proceeded to a residence located at 140 North 11th Street in Allentown, Pennsylvania. Upon Barr's arrival, Appellant exited the residence and provided Barr with fentanyl/heroin in exchange for money. On May 12, 2020, Barr completed a third controlled purchase from the same residence. On May 15, 2020, police executed a search warrant on the residence. Appellant was present, and police found in Appellant's pockets a key to the residence and two bags of cocaine. Police also recovered marijuana, packaging materials, and a digital scale from the residence.

The Commonwealth subsequently charged Appellant with four counts each of PWID, conspiracy to commit PWID, possession of a controlled substance, and possession of drug paraphernalia.[2] On May 3, 2024, following a trial, a jury convicted Appellant of two counts each of PWID and conspiracy, and three counts of possession of a controlled substance. The jury acquitted Appellant of the remaining charges. The trial court ordered the preparation of a pre-sentence investigation report (PSI). On May 30, 2024, the trial court

_____

[2] 35 P.S. § 780-113(a)(32).

imposed an aggregate sentence of 11 to 23 years' imprisonment. No post-sentence motion followed.

On June 13, 2024, though still represented by trial counsel, Appellant filed a *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. On June 18, 2024, Appellant filed a *pro se* notice of appeal to this Court.[3] The same day, Appellant's trial counsel moved to withdraw from representation. The trial court granted trial counsel's motion and appointed Counsel to represent Appellant. On August 29, 2024, the trial court dismissed Appellant's PCRA petition without prejudice, and directed Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In lieu of a concise statement, Counsel filed a timely statement of intention to withdraw under Rule 1925(c)(4).

On April 28 and 30, 2025, Counsel filed in this Court an **Anders** brief and a petition to withdraw. Appellant has not responded to Counsel's petition, nor has he retained separate counsel.

We first examine Counsel's request to withdraw. **See Commonwealth v. Bennett**, 124 A.3d 327, 330 (Pa. Super. 2015) (requiring this Court to first review whether counsel has met the procedural requirements of **Anders** and

_____

[3] Appellant's notice of appeal purported to appeal from a May 13, 2024, order. However, our review discloses no order was entered on that date. Appellant's appeal properly lies from his May 30, 2024, judgment of sentence, and we have corrected the caption accordingly.

- 3 -

*Santiago*). An attorney seeking to withdraw from representation on appeal

must

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the brief to the defendant; and (3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to *Santiago*, counsel must also

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* (citing *Santiago*, 978 A.2d at 361). Once counsel has complied with the

procedural requirements, we review the record and render an independent

judgment as to whether the appeal is wholly frivolous. *Commonwealth v.*

*Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, Counsel filed an *Anders* brief and a separate petition to withdraw.

In her petition, Counsel confirms she conducted a thorough and conscientious

review of the record and concluded Appellant's appeal is frivolous. *See*

Petition to Withdraw, 4/30/25, ¶¶ 6-7. Additionally, Counsel sent a letter to

Appellant, informing him of Counsel's intention to withdraw and advising him

of his right to retain new counsel or proceed *pro se* to raise additional claims.

*See id.*, Attachment. The record reflects that Counsel furnished Appellant with copies of the petition to withdraw and the *Anders* brief. The *Anders* brief summarizes the facts and procedural history, includes issues that could arguably support Appellant's appeal, and explains Counsel's assessment of why the issues are frivolous, with citations to the record and relevant legal authority. As Counsel has satisfied the procedural requirements of *Anders* and *Santiago*, we next review the record to determine whether Appellant's appeal is wholly frivolous.

Counsel's *Anders* brief identifies issues challenging the sufficiency and weight of the evidence underlying the verdict, and the legality and discretionary aspects of Appellant's sentence. *See Anders* Brief at 7-16.

In its first issue, the *Anders* brief identifies a challenge to the sufficiency of the evidence supporting each of Appellant's convictions. *Id.* at 7-11. When reviewing a sufficiency claim, this Court

> must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Peralta*, 311 A.3d 1, 4 (Pa. Super. 2024) (citation omitted).

The statute governing possession of a controlled substance prohibits "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act…." 35 P.S. § 780-113(a)(16). The element of possession can be established "by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 437 (Pa. Super. 2021) (citation omitted).

With respect to PWID, the statute prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act…." 35 P.S. § 780-113(a)(30). "To sustain a PWID conviction, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." ***Commonwealth v. Smith***, 317 A.3d 1053, 1060 (Pa. Super. 2024) (citation and quotation marks omitted). "It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." ***Commonwealth v. Baker***, 72 A.3d 652, 658 (Pa. Super. 2013) (citation omitted).

Regarding conspiracy, the Crimes Code provides that

[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). This Court has explained the elements of conspiracy as follows:

> In **Commonwealth v. Lambert**, 795 A.2d 1010 (Pa. Super. 2002) [(*en banc*)], this Court set forth four factors to consider in deciding if a conspiracy existed. Those factors were: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." **Id.** at 1016. A "conspiratorial agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." **Commonwealth v. Feliciano**, 67 A.3d 19, 26 (Pa. Super. 2013) (*en banc*). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." **Id.**

**Commonwealth v. Mitchell**, 135 A.3d 1097, 1102-03 (Pa. Super. 2016).

Instantly, the jury convicted Appellant of two counts each of PWID, conspiracy, and possession of a controlled substance, in connection with the first two controlled purchases, which occurred on May 8 and 9, 2020.[4] Appellant's third possession conviction involved the cocaine police found in his pocket during execution of the May 15, 2020, search warrant. **See** Amended Information, 5/1/24; Verdict Slip, 5/3/24.

---

[4] The jury acquitted Appellant of the charges arising from the third controlled purchase on May 12, 2020. **See** Amended Information, 5/1/24; Verdict Slip, 5/3/24.

Detective Iran Millan (Detective Millan) of the Bucks County District Attorney's Office testified at trial that, in May 2020, he was involved in a drug task force's investigation into the sale of fentanyl. N.T., 5/2/24, at 55-57. On May 5, 2020, Detective Millan met with Barr, who provided information regarding Breeland and agreed to make controlled purchases of narcotics from Breeland. *Id.* at 59-73.

On May 8, 2020, Barr texted Breeland, saying "I needed to grab 1 of those things from u." Commonwealth's Exhibit 23. Breeland asked, "How much[?]" *Id.* Barr stated, "1 bunny rabbit." *Id.* Breeland responded, "Come to my house." *Id.* Barr testified that the text exchange meant, "I want to come and buy drugs." N.T., 5/3/24, at 155. Barr indicated that "bunny rabbit" is slang for "bundle," and a bundle is approximately a quarter gram of heroin or fentanyl. *Id.* at 155-57.

Police then transported Barr to the area near 140 North 11th Street in Allentown, which Barr knew as Breeland's residence. *Id.* at 157-60. Police searched Barr and confirmed he possessed no drugs, and provided him with cash. *Id.* at 158-61. Barr called Breeland "and let him know I'm here," and Breeland "said come to the house…." *Id.* at 161. As Barr approached Breeland's residence, an individual, whom Barr identified as Appellant, exited the residence and approached Barr. *Id.* at 162.

Barr testified that it is common to order drugs from one person and receive them from a second person. *Id.* at 166; *see also id.* at 166-67 (Barr's

testimony that "it's like Amazon. You don't know who your driver is going to be. But you know you placed your order and you know it's coming. It doesn't matter who brings it out as long as you get your package."). Barr testified that he knew Appellant was the person he was supposed to meet because Appellant "gave me the head nod" and "he was coming out of where he was supposed to be coming out of," *i.e.*, Breeland's residence. ***Id.*** at 163.

Barr and Appellant engaged in a hand-to-hand exchange of cash for drugs. ***Id.*** at 163-66. Police surveilled and video-recorded the transaction. N.T., 5/2/24, at 145-61; ***see also*** Commonwealth Exhibit C1-B1. Bucks County Detective Peter Sarris, who captured the video recording, testified that he observed Appellant wearing a baseball cap with the word "Junbug" on its back strap. N.T., 5/2/24, at 145-46, 156-57. Police later obtained Breeland's cellphone, which had a contact saved as "Junbug." ***Id.*** at 219-20, 275. A data extraction performed on Breeland's phone revealed multiple phone calls between Breeland and "Junbug" around the time of the May 8, 2020, controlled purchase. ***Id.*** at 282-83.

After the transaction, Barr made a recorded phone call to Breeland and asked whether the item he purchased was "white girl" or "dog food," and Breeland confirmed it was "dog food." ***Id.*** at 94-97; N.T., 5/3/24, at 167-69; ***see also*** Commonwealth Exhibit C1-A5. Barr testified that "[w]hite girl is cocaine. Dog food is dope/heroin/fentanyl." N.T., 5/3/24, at 167-68. The drugs later tested positive as containing fentanyl and heroin. ***Id.*** at 89-90

(testimony of Bridget McGinty, forensic chemistry site supervisor at the National Medical Services Laboratory).

On May 9, 2020, Barr texted Breeland, saying, "u gonna be around later? I'm trying to come see you for like 3-4." Commonwealth Exhibit 23. Breeland responded, "Ok…. Let me know a little before you leave so I can have it there for you." *Id.* Barr testified that "like 3-4" meant "[t]hree or four bundles." N.T., 5/3/24, at 170-71.

Police transported Barr to the area of Breeland's residence and searched him to confirm he did not possess any drugs. *Id.* at 171. Barr approached the residence; Appellant exited the residence; and the two engaged in a hand-to-hand exchange of cash for drugs. *Id.* at 171-74. Police surveilled and video-recorded the transaction. N.T., 5/2/24, at 101-104, 164-73; *see also* Commonwealth Exhibit C1-B5. Breeland's phone data showed multiple calls between Breeland and "Junbug" around the time of the transaction. N.T., 5/2/24, at 283. The drugs later tested positive as containing fentanyl and heroin. N.T., 5/3/24, at 97.

Our review confirms the above evidence, viewed in the light most favorable to the Commonwealth, was sufficient to convict Appellant of two counts each of PWID and possession of a controlled substance. Given that Barr ordered drugs from Breeland and received them from Appellant, the evidence was also sufficient to convict Appellant of two counts of conspiring with Breeland to commit PWID.

Regarding the third possession conviction, Quakertown Borough Police Officer Nicholas Filoon (Officer Filoon) testified that police executed a search warrant on Breeland's residence on May 15, 2020. N.T., 5/2/24, at 234-35. Appellant was the only person present in the residence at the time. *Id.* at 236. Officer Filoon testified that he searched Appellant, and recovered from Appellant's pockets a key to the residence, $44 in cash, and "two plastic bags [containing] a white powder substance…." *Id.* at 239. Officer Filoon testified that when he removed the white powder bags from Appellant's pocket, Appellant said, "personal use." *Id.* at 240. The substance later tested positive as cocaine. N.T., 5/3/24, at 103. At trial, Appellant did not appear to contest his possession of the cocaine. *See id.* at 279-80 (wherein, in closing argument, trial counsel conceded Appellant possessed the cocaine for personal use). Our review confirms this evidence was sufficient to convict Appellant of the third possession charge.

In light of the foregoing, we agree with Counsel's conclusion that Appellant's sufficiency claim lacks merit and is frivolous.

In its second issue, the ***Anders*** brief identifies a challenge to the weight of the evidence. ***Anders*** Brief at 11-12. Before reaching the merits of Appellant's weight claim, we must first address whether he preserved the claim for appellate review. Pennsylvania Rule of Criminal Procedure 607 provides, in relevant part:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Id.*, cmt. "Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim." ***Commonwealth v. Bryant***, 57 A.3d 191, 196 (Pa. Super. 2012) (citing Pa.R.Crim.P. 607).

Instantly, in the ***Anders*** brief, Counsel concludes Appellant's weight claim lacks merit, but does not address whether the claim was preserved for appellate review. ***Anders*** Brief at 11-12. Our review discloses Appellant failed to challenge the weight of the evidence before the trial court, either in an oral or written motion prior to sentencing, or in a post-sentence motion. As Appellant failed to preserve his weight claim in accordance with Rule 607, the claim is waived and frivolous. ***See Bryant***, 57 A.3d at 196

In its third issue, the ***Anders*** brief identifies a challenge to the legality of Appellant's sentence. "Review of the legality of a sentence presents a pure question of law. As such, our scope of review is plenary and our standard of review *de novo*." ***Commonwealth v. Verma***, 334 A.3d 941, 951 (Pa. Super. 2025) (citation and quotation marks omitted).

> Legality of sentence issues occur generally either: (1) when a trial court's traditional authority to use discretion in the act of

sentencing is somehow affected and/or (2) when the sentence imposed is patently inconsistent with the sentencing parameter set forth by the General Assembly. Most other challenges implicate the discretionary aspects of a sentence, even though the claim may involve a legal question, a patently obvious mathematical error, or an issue of constitutional dimension.

*Commonwealth v. Starr*, 234 A.3d 755, 765 (Pa. Super. 2020) (citations and quotation marks omitted).

Instantly, for each of the two PWID and two conspiracy charges, the trial court sentenced Appellant to 42 to 84 months' imprisonment. *See* Sentencing Order, 5/30/24. Each of these four sentences was at the top of the aggravated range of the Sentencing Guidelines. The first two possession charges merged with the PWID charges for sentencing purposes. For the third possession charge, the trial court imposed a standard-range sentence of 6 to 24 months' imprisonment. With the exception of the second conspiracy sentence, the sentences were run consecutively, resulting in an aggregate sentence of 11 to 23 years' imprisonment.

In the *Anders* brief, Counsel thoroughly reviewed Appellant's sentence and concluded the trial court imposed "a legal sentence." *Anders* Brief at 2-3, 14-15. Our review confirms this conclusion, and we agree with Counsel that Appellant's illegal sentence claim lacks merit and is frivolous.

In its fourth and final issue, the *Anders* brief identifies a challenge to the discretionary aspects of Appellant's sentence. *Anders* Brief at 13-15. Counsel suggests Appellant may argue the trial court abused its discretion and imposed an unduly harsh sentence by running four of his five sentences

- 13 -

consecutively. ***Id.*** at 15. However, Counsel correctly observes that "[c]riminal defendants do not have the automatic right to challenge the discretionary aspects of their sentence." ***Id.*** at 13 (quoting ***Commonwealth v. Robinson***, 931 A.2d 15, 19 (Pa. Super. 2007) (*en banc*), overruled on other grounds by ***Commonwealth v. Prinkey***, 277 A.3d 554 (Pa. 2022)). To invoke this Court's jurisdiction to challenge the discretionary aspects of a sentence, a defendant must satisfy a four-part test, which requires a defendant to, *inter alia*, "properly preserve [the issue] at sentencing or in a motion to reconsider and modify sentence…." ***Id.*** at 13-14 (quoting ***Commonwealth v. Swope***, 123 A.3d 333, 337 (Pa. Super. 2015)).

Instantly, Counsel correctly observes that Appellant failed to preserve any challenge to the discretionary aspects of his sentence, either at sentencing or in a post-sentence motion. ***See id.*** at 15. Accordingly, Appellant cannot invoke this Court's jurisdiction over this issue. ***See Commonwealth v. Blango***, 327 A.3d 670, 678 (Pa. Super. 2024) (holding that where defendant failed to preserve a challenge to the discretionary aspects of his sentence below, he could not invoke this Court's jurisdiction).

Finally, our independent review discloses no non-frivolous issues Appellant could raise. Accordingly, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025